IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| SUSAN MARIE CANAVAS | § | |
| | § | |
| v. | § | C.A. NO. C-11-399 |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY | § | |

**MEMORANDUM AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Susan Marie Canavas brought this pro se action on December 20, 2011, seeking review of the Commissioner's final decision that she is not disabled and, therefore, not entitled to disability insurance benefits.  (D.E. 1).  On March 30, 2012, Defendant filed a motion for summary judgment.  (D.E. 12).  Plaintiff filed a motion for summary judgment on April 3, 2012. (D.E. 14).  Both Defendant and Plaintiff have submitted opposing responses.  (D.E. 15, 16).  For the reasons that follow, it is respectfully recommended that Plaintiff's motion for summary judgment be granted in part and denied in part, Defendant's motion for summary judgment be granted in part and denied in part, and the action be remanded for further proceedings.

**I.  JURISDICTION**

The Court has jurisdiction over the subject matter and the parties pursuant to 42 U.S.C. § 405(g).

**II.  BACKGROUND**

On February 26, 2010, at the age of forty-six, Plaintiff filed a claim with the Social Security Administration for disability insurance benefits, alleging a disability period beginning from December 15, 2008.  Tr. 114.  The claim was denied on April 23, 2010.  Tr. 59-62. Plaintiff appealed, and her appeal was denied on July 8, 2010.  Tr. 67-69.  She requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 16, 2011.  Tr. 23-55.  On May 13, 2011, the ALJ issued a decision denying disability benefits.  Tr. 10-18.

After the Social Security Administration denied Plaintiff's request to review the ALJ's decision, Tr. 2-3, she filed this action.  (D.E. 1).

**A.       Plaintiff's Medical Records.**

Plaintiff's alleged impairments consist of back pain due to an injury, osteoarthritis in her tail bone and bottom three discs, high blood pressure, severe nerve damage in both legs, and sciatica.  Tr. 131.  Unless otherwise provided, the following records detail her struggle with these conditions prior to the alleged onset date of December 15, 2008.

**1.       Plaintiff's back problems.**

On January 11, 2007, Plaintiff visited Dr. Eduardo O. Caveda for her back pain, who then ordered x-rays of her lower spine, coccyx, and sacrum.  Tr. 304.  On January 25, 2007, Dr. Hugh N. West III prepared a radiology report indicating that he found no fractures, dislocations, or destructive lesions in either her coccyx or sacrum.  Tr. 213-14.  He did, however, find that she had "hypertrophic spurring of the lumbar vertebral bodies" and "degenerative disc disease at the L5-S1 interspace."  Tr. 212.  In handwritten notes, an unknown person indicated the presence of mild osteoarthritis related to the spurring.  Id.

On October 8, 2008, Plaintiff checked into the emergency room for lower back pain.  Tr. 188.  She was discharged shortly thereafter with instructions to take her prescription medicine, engage in stretching exercises, and to follow up with her primary care doctor.  Tr. 189, 193.  An MRI of her lumbar spine was conducted on October 22, 2008 by Doctor Richard P. Chepey.  Tr.

210.  He found no disc herniation[1] or spinal stenosis,[2] but he did observe degenerative changes in the articular facets of L4-5 and L5-S1.  Id.  Finally, he reported that Plaintiff's vertebral bodies appeared normal, except for mild spurring.  Id.  On October 28, 2008, Dr. Caveda diagnosed her with lower back pain, degenerative arthritis, and facet arthritis.  Tr. 298.

Dr. Gabriel Lopez examined Plaintiff for her back pain on December 5, 2008.  Tr. 229.  He prescribed medication and physical therapy.  Id.  In correspondence to Dr. Borkowski, Dr. Lopez noted that Plaintiff had "considerable lower facet arthropathy."[3]  Tr. 354.  Plaintiff began physical therapy on December 10, 2008.  Tr. 352-53.

On April 19, 2010, Dr. Kavitha Reddy determined that Plaintiff "will be able to function appropriately and sustain a normal work day" after examining the medical records created prior to the alleged onset date.  Id.  Tr. 249.  She arrived at this conclusion even while acknowledging the prior diagnoses of degenerative changes of the articular facets of L4-5 and L5-S1 and marrow edema on the right side.  Id.  Dr. Jeanine Kwun affirmed Dr. Reddy's determination and added that "there is not canal stenosis nor any HNP noted in MRI."  Tr. 250.

### 2.     Plaintiff's high blood pressure.

No specific diagnosis of high blood pressure has been made by any physician in the record.  During the physical examination administered on December 5, 2008, Plaintiff claimed that she had suffered from high blood pressure in the past.  Tr. 223.

---

[1] "Disk herniation" refers to a "protrusion of the nucleus pulposus or anulus fibrosus of an intervertebral disk, which may impinge on nerve roots."  Dorland's Illustrated Medical Dictionary 814 (29th ed. 2000) [hereinafter Dorland's].

[2] "Spinal stenosis" refers to the "narrowing of the vertebral canal, nerve root canals, or intervertebral foramina of the lumbar spine caused by encroachment of the bone upon the space; symptoms are caused by compression of the cauda equina and include pain, paresthesias, and neurogenic claudication."  Dorland's, at 1698.

[3] "Arthropathy" generally refers to "any joint disease."  Dorland's, at 152.

### 3. Plaintiff's leg pain and sciatica.

On October 13, 2008, Dr. Caveda diagnosed Plaintiff with sciatica[4] associated with her lower back pain.  Tr. 300.  He also determined that she had pedal edema.[5]  Id.  In subsequent examinations on October 23, 2008 and October 28, 2008, Dr. Caveda repeated his diagnosis of sciatica and pedal edema, and found that she had marrow edema as well.  Tr. 298-99.

Plaintiff reported experiencing pain radiating from her lower back to her legs during her December 5, 2008 physical examination.  Tr. 225.  She also complained that her feet were swelling.  Tr. 226.  She was able to raise her leg to ninety degrees with lumbar pain, and her muscle strength of both lower extremities was rated at 5/5.  Tr. 228.  Following this examination, Dr. Lopez ordered sensory nerve conduction testing "to rule in/out nerve pathology."  Tr. 229. The electrodiagnostic report indicates that Plaintiff suffered from a range of impaired conduction in her peroneal and sural nerves, as well as hyper conduction in her upper lumbar and lateral femoral cutaneous nerves.  Tr. 355-56.  In a December 5, 2008 letter to Dr. Borkowski, Dr. Lopez explained that although Plaintiff "has quite a bit of back and leg pain," there was "no compressive pathology to explain her leg pain."  Tr. 354.  Dr. Reddy referenced these diagnoses of sciatica, pedal edema, and marrow edema on the right side.  Tr. 249.

### B. Plaintiff's Administrative Hearing.

On March 16, 2011, an administrative hearing was held to examine Plaintiff's claims. Tr. 23-55.  At the hearing, she was represented by her attorney, Elizabeth Campos.  Tr. 23.

---

[4] "Sciatica" is "a syndrome characterized by pain radiating from the back onto the buttock and into the lower extremity along its posterior or lateral aspect, and most commonly caused by protrusion of a low lumbar intervertebral disk; the term is also used to refer to pain anywhere along the course of the sciatic nerve."  Dorland's, at 1609.

[5] "Edema" generally refers to "the presence of abnormally large amounts of fluid in the intercellular tissue spaces of the body, usually referring to demonstrable amounts in the subcutaneous tissues."  Dorland's, at 567.

Plaintiff, George Decherd, a medical doctor, and Donna Johnson, a vocational expert, all testified.  Id.

The ALJ began the hearing by entering exhibits 1A through 10F into the record.  Tr. 26. Plaintiff's attorney did not object to the exhibits, and she did not attempt to supplement the record with additional evidence.  Id.  The ALJ then asked Dr. Decherd to testify about whether Plaintiff satisfied any of the listings.  Tr. 27.  He opined that she did not meet or equal any of the listings despite her history of lower back pain.  Id.  He also noted that there was nothing in the medical records suggesting that she had herniation or stenosis, id., and he found her strength and neurologic examination results unremarkable.  Tr. 28.  When asked what limitations he would place on Plaintiff's working capacity as a result of his physical limitations, Dr. Decherd answered that he thought she could lift twenty pounds occasionally and ten pounds frequently. Tr. 28.  He also believed that Plaintiff could stand or walk for six hours, but would need an option to sit.  Id.  Finally, he ruled out any jobs that involved the use of ladders, ropes, or scaffolds due to her "body habitus and back pain."  Id.  When asked by Plaintiff's attorney whether the existence of chronic pain would be consistent with the findings in the medical records, Dr. Decherd responded in the affirmative.  Tr. 29.

The ALJ next asked Plaintiff questions relating to her work history.  She testified that she had completed barbering school, became a master barber, and owned a barber shop.  Tr. 30.  She also represented that she later found employment as a home health aide and as a paper courier. Tr. 31.  At the end of December 2010, Plaintiff was living in a house with her husband and two children, ages sixteen and three.  Tr. 32.  Her activities included rearing her infant child, Tr. 33, cooking, id., grocery shopping, Tr. 34, attending church, Tr. 36, knitting, Tr. 37, and working on her computer for short periods of time.  Id.  When shopping, she was able to place her twenty-

pound baby into the shopping cart.  Tr. 35.

Plaintiff was also asked about her medication and her physical limitations.  She told the ALJ that Tylenol was not effective, but did indicate that other medication did help relieve her pain for about five hours at a time.  Tr. 38-39.  She would have difficulty performing even sedentary jobs in a seated position because her legs would go numb, forcing her to reposition herself every fifteen minutes or elevate her feet up on a pillow.  Tr. 40-42.

Plaintiff's attorney also took the opportunity to ask her questions in order to further illuminate the nature and scope of her health condition.  She testified that from December 15 to December 31, 2008, she experienced constant and severe back pain as well as debilitating leg numbness.  Tr. 44.  When asked to discuss her back problems, she elaborated that she was unable to bend over and had difficulty picking up her infant daughter.  Tr. 43.  On a ten-point scale, she rated the back pain as a ten without medication and a six with medication.  Id.  Plaintiff revealed that she was unable to walk more than a block at a time, and she felt pain regardless of whether she was sitting or standing.  Tr. 45.  During that time period, she recounted that she was effectively immobile due to the extreme pain.  Tr. 45-46.  She could only sleep three hours per night, and only in intervals of twenty minutes at a time.  Tr. 47.  Following this period of acute pain, Plaintiff testified that a pain management program was helping her cope.  Tr. 44.

The ALJ then asked Ms. Johnson the following hypothetical:

> I'd like you to assume an individual was 45 at her alleged onset date, 45 at her date last insured.  She has a high school education plus completed a barber's school.  I believe she said she was a master barber.  Her past relevant work history is noted in the E section of the exhibit file and as she testified hereto this date.  I'd like you to assume for this first hypothetical, I'm going to limit her as, as -- pursuant to the doctor's testimony: lift and carry 20 occasionally, only 10 pounds frequently.  Ten pounds is roughly a gallon of milk, which weighs about 8.8 pounds.  Sit, stand, and walk -- sit and -- stand and walk six of an eight-hour day; sit

6

> unlimited, but she would need a sit/stand option....
>
> ....
>
> And due to -- in part to the back problems and the body habitus,
> she should not climb ladders, ropes or scaffolds.  No work at
> unprotected heights, nor any work would require balancing as a
> condition of employment.  Within the confines of that, my first
> hypothet, I ask you, could she do any of her past relevant work
> either as she performed it, or as it normally would be performed
> pursuant to the dictates of the Dictionary of Occupational Titles?

Tr. 48-49.  Ms. Johnson answered that such a hypothetical person could work as a barber who

owned her own business.  Tr. 49.  The ALJ then posed a second hypothetical incorporating the

prior restrictions with an additional limitation:

> [L]et's assume that she would have occasion to maybe elevate her
> feet, and I'm going to have like a foot rest rail like all the people in
> our office, and we have here, where you can elevate your feet on a
> rest or a rail.  Would that reduce it to sedentary, pretty much?

Id.  Ms. Johnson replied that if a person would have to raise their feet for four or more hours,

then such a person could only perform sedentary jobs.  Tr. 50.  She then listed a number of

sedentary jobs that a person who was so constrained by the hypothetical could perform, such as

telephone quotation clerk, charge account clerk, surveillance system monitor, and

addresser/labeler.  Tr. 50-51.  She also added that these employees could not take off more than

two days per month.  Tr. 51.

Following the ALJ's questioning, Plaintiff's attorney posed a hypothetical of her own:

> Let me ask, this claimant's hypothetical number one based on the
> claimant's testimony as given, about an individual with the same
> age, education, educational background; lift 10 pounds
> occasionally, less than 10 pounds frequently; sit less than two
> hours out of an eight-hour day and stand less than two hours out of
> an eight-hour day.  A sit/stand option, however, would be -- still be
> necessary and a claimant would not be capable of walking more
> than one block at a time.... [R]amps, stairs, ladders, ropes and
> scaffolds would be never.  Balancing never, but the rest of the
> posturals of stooping, kneeling, crouching, and crawling would be

> at the occasional level.  And no dangerous activities.  Should –
> could a -- such an individual go back and do their relevant work?

Tr. 51-52.  Ms. Johnson responded in the negative, observing that a person who could only work four hours a day would not be performing a substantial gainful activity.  Tr. 52-54.  Plaintiff's attorney then directed Ms. Johnson to consider another hypothetical question:

> And then claimant's hypothetical two, basically just adds onto judge's hypothetical number one.  With an individual 20 -- it's 20/10; six and six; sit/stand option; no ladders, no balancing, and no dangerous activities.  However, we're going to bring in the chronic pain component, as described by the claimant, of moderate to severe that would affect claimant's concentration, persistence, and pace equivalent to 20 percent of a 40-hour workweek, where she would not be able to perform or finish her tasks, which would be, to quantify, eight hours out of a 40-hour workweek.  I'm assuming she couldn't do past relevant work.

Tr. 54.  In light of these restrictions, Ms. Johnson testified that such a claimant would be unable to either perform work or sustain employment.  Id.

**C.      The ALJ's Decision.**

On May 13, 2011, the ALJ issued an unfavorable decision for Plaintiff, concluding that she had not been "disabled" within the meaning of the Social Security Act between the December 15, 2008 alleged onset date to December 31, 2008, the last date insured.  Tr. 12, 18. He began by finding that Plaintiff did not engage in substantial gainful activity during that time period.  Tr. 12.  The ALJ next concluded that Plaintiff suffered from several severe impairments, consisting of degenerative arthritis of the lumbar spine and obesity.  Id.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the listings.  Id.  The ALJ specifically examined Listing 1.04, pertaining to disorders of the spine.  Tr. 13.  He explained that Listing 1.04 requires evidence of nerve root compression, arachnoiditis, or lumbar stenosis, none of which were

8

present in the record.  Id.  He also placed special emphasis on Social Security Ruling ("SSR")

02-1p, 2002 WL 34686281 (S.S.A. Sept. 12, 2002), a policy interpretation addressing obesity

issues.

The ALJ next calculated Plaintiff's Residual Functional Capacity ("RFC"), finding her

able to lift and carry ten pounds occasionally.  Id.  He further found her able to stand or walk

about two hours in a work day, and she could sit for about six hours a day.  Id.  A sit/stand

option was included, as well as the ability to elevate her feet.  Id.  The ALJ also precluded any

job requiring her to climb ropes, scaffolds or ladders, balance, or work at unprotected heights.

Id.

In reaching these determinations, the ALJ considered the Plaintiff's testimony, the

medical record pertaining to her condition between December 15, 2008 through December 31,

2008, and Dr. Decherd's assessment.  Tr. 14-15.  The ALJ specifically found that while

Plaintiff's "medically determinable impairments could reasonably be expected to cause some of

the alleged symptoms, ... the claimant's statements concerning the intensity, persistence and

limiting effects of these symptoms are not credible to the extent they are inconsistent with the

above residual functional capacity assessment."  Tr. 14.

Although the ALJ acknowledged that Plaintiff was diagnosed with lower back pain,

sciatica, pedal edema, degenerative changes of the articular facets of L4-5 and L5-S1, as well as

mild spurring of the vertebral bodies, he also noted that a neurological examination produced

results within normal limits, there were no findings of disc herniation or spinal stenosis, and the

vertebral bodies otherwise appeared normal.  Id.  Moreover, he cited to numerous instances in

the record tending to undercut Plaintiff's claims of total disability.  In particular, the ALJ

referenced the "essentially routine and/or conservative" treatment of her condition with pain

9

medication and physical therapy.  Tr. 15.  He also explained that he was unable to find any recommendation that she undergo spinal surgery.  He found it particularly significant that none of Plaintiff's physicians placed any functional restriction on her activities that would preclude work activity.  Tr. 15-16.  Referring to her October 2008 MRI that failed to detect any herniation or stenosis, he concluded that the objective medical findings were not as severe as would be expected in a totally disabled individual.  Tr. 15.

In addition, the ALJ found that Plaintiff had admitted that the conservative pain management treatment was relatively effective in controlling her symptoms.  Tr. 15-16.  Specifically, he noted that she admitted the medication "helped" control her pain at the hearing.  He also noticed that she had advised medical personnel that she was feeling "ok" three months after beginning pain management and only needed medication refills.  Tr. 16, 209.  Furthermore, the ALJ found that Plaintiff's ability to care for her infant child, cook, perform household chores, shop, drive, knit, use the computer, attend church, and attend to her own personal needs established that her daily activities were "not limited to the extent that one would expect" given her purportedly debilitating condition.  Id.

The ALJ gave significant weight to Dr. Decherd's testimony, who concluded that Plaintiff could lift or carry twenty pounds occasionally and ten pounds frequently, stand or walk for six hours in an eight hour work day, and needed a sit/stand option.  Tr. 15.  Dr. Decherd also determined that she could not climb ladders, ropes or scaffolds, and should avoid unprotected heights.  Id.  Nevertheless, the ALJ explained that he found Plaintiff was even more limited than determined by Dr. Decherd.  Id.  Similarly, the ALJ credited Dr. Reddy's report indicating that Plaintiff was not disabled, albeit with the proviso that he still believed Plaintiff was more limited than the assessment indicated.  Id.  As a result, the ALJ's final RFC finding that Plaintiff could

only lift or carry up to ten pounds occasionally was more restrictive than Dr. Decherd and Dr. Reddy's recommendations.

The ALJ found that Plaintiff was unable to perform any of her past relevant work as a barber, home health aide, and paper courier. Tr. 16. He also determined that Plaintiff was forty-five years old as of December 31, 2008, the last date insured, possessed a high school education, and was able to communicate in English. Id. After considering her age, education, work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that she could have performed. Tr. 16-17. He specifically referenced Ms. Johnson's testimony that an individual with Plaintiff's attributes and RFC could perform the requirements of representative occupations such as telephone quotation clerk, charge account clerk, surveillance system monitor, and address labeler. Tr. 17. Consequently, he concluded that Plaintiff was not "disabled" as defined by the Social Security Act from December 15, 2008, the alleged onset date, to December 31, 2008, the date last insured. Tr. 20.

### III.  LEGAL STANDARDS

**A.    Social Security Act Disability Benefits Requirements.**

The same law and regulations govern whether an individual is considered disabled and therefore entitled to benefits under either the disability insurance benefits or the supplemental security income benefits provisions of the Social Security Act. Haywood v. Sullivan, 888 F.2d 1463, 1467 (5th Cir. 1989) (per curiam) (citations omitted). Specifically, the Social Security Act establishes that every individual who is insured for disability insurance benefits, has not attained the set retirement age, has filed an application for disability benefits, and is under a disability is entitled to receive disability benefits. 42 U.S.C. § 423(a)(1).

Disability is defined as the "inability to engage in any substantial gainful activity by

11

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act further provides that a claimant is not disabled if that person can perform jobs available in the national economy:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

**B.      Social Security Administration Regulations And Rulings.**

To determine if an individual suffers from a disability, as defined by the Social Security Act, the Commissioner has promulgated regulations containing a five-step sequential process to be used by the Social Security Administration.  20 C.F.R. §§ 404.1520, 416.920.  A disability finding at any point in the five-step sequential process is conclusive and ends the analysis.  Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990) (citation omitted).

A claimant bears the burden of proof on the first four steps.  Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citation omitted).  The claimant must prove that: (1) he is not presently engaged in substantial gainful activity; (2) he suffers from an impairment or impairments that are severe; and that either (3) the impairment meets or equals an impairment listed in the appendix to the regulations; or (4) due to the claimant's RFC, the impairment prevents the claimant from doing any past relevant work.  20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4); <u>see</u> <u>also</u> <u>Bowling</u>, 36 F.3d at 435; <u>Villa</u>, 895 F.2d at 1022.

  The Fifth Circuit has held that "[t]he first two steps involve threshold determinations that the claimant is not presently engaged in substantial gainful activity and has an impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities." <u>Loza v. Apfel</u>, 219 F.3d 378, 390 (5th Cir. 2000) (citations omitted).  The Commissioner may find that a claimant's impairment fails to meet the significant limitation requirement of step two "only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." <u>Id.</u> at 391 (citation omitted).

  Step three requires a claimant to prove that any of his impairments meet one or more of the impairments listed in the regulations, which include both physical and mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1.  The criteria for determining the severity of the listed mental impairments include whether there is marked interference with activities of daily living, social functioning, concentration, persistence, or pace, and repeated episodes of decompensation.  <u>Id.</u> at Pt. A § 12.00(C).  The regulation defines "episodes of decompensation" as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." <u>Id.</u> at Pt. A § 12.00(C)(4). The claimant must present evidence that the impairment is a long-term problem rather than a temporary set-back, but "does not have to show a 12 month period of impairment unmarred by any symptom-free interval." <u>Singletary v. Bowen</u>, 798 F.2d 818, 821 (5th Cir. 1986) (citations omitted).

  Pursuant to the fourth step, a claimant who is unable to show that his impairment meets

13

one of the listed impairments must show that he is unable to perform his past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  The claimant's RFC is taken into consideration to determine whether his impairments may cause physical and mental limitations that affect his ability to work.  20 C.F.R. §§ 404.1545, 416.945.  The RFC is the most a claimant can do despite any limitations caused by an impairment.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  All relevant evidence in the record, including medical and non-medical evidence, is taken into consideration by the Commissioner when making a determination of a claimant's RFC.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

The Commissioner must consider all of a claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical and non-medical evidence in the record.  Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996).  "[T]he adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities."  Id. at *2.  When a claimant's statements concerning symptoms and their associated limitations "are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record."  Id.

The adjudicator's discussion of a claimant's RFC must thoroughly discuss and analyze the objective medical and other evidence in relation to the symptoms.  SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996).  This discussion must include a resolution of any inconsistencies in the record, address a logical explanation of effects of the alleged symptoms on the individual's ability to work, contain a determination of why symptom-related functional limitations can or cannot be reasonably accepted as consistent with medical or non-medical

evidence, and address any medical opinions contained in the record.  Id.

If the claimant is able to meet his burden under the first four elements, the burden shifts to the Commissioner for the fifth.  Bowling, 36 F.3d at 435.  The fifth step requires the Commissioner to determine, based on the claimant's RFC, age, education, and work experience, if the claimant can make an adjustment to other work that exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant cannot make an adjustment to other work, the claimant is disabled.  Id.

C.      **Judicial Review Of The Commissioner's Decision.**

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two questions: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. See Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000) (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); accord Carey, 230 F.3d at 135.  The Fifth Circuit has described this burden as more than a scintilla, but less than a preponderance.  Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995) (citations omitted).  A finding of "no substantial evidence" occurs "only where there is a conspicuous absence of credible choices or no contrary medical evidence."  Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988) (per curiam) (citation omitted).

If the Commissioner's findings are supported by substantial evidence, the Court must defer to the Commissioner and affirm the findings.  See Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002) (citation omitted).  In applying the substantial evidence standard, courts scrutinize the record to determine whether such evidence is present.  They do not, however, re-

15

weigh the evidence, try the issues <u>de novo</u>, or substitute their judgment for that of the Commissioner.  <u>Id.</u>; <u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted). Factual conflicts that exist in the record are for the Commissioner and not the Court to resolve. <u>Masterson</u>, 309 F.3d at 272.  It is incumbent upon the Court to look at the evidence as a whole and take into account the following factors: "(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history."  <u>Wren v. Sullivan</u>, 925 F.2d 123, 126 (5th Cir. 1991) (per curiam) (citation omitted).

## IV. <u>ANALYSIS</u>

Plaintiff argues that the ALJ failed to consider medical documents that were not part of the evidence admitted into the record at the hearing.  (D.E. 1, at 1; D.E. 14, at 1).  She contends that these documents show that her back was "broken" and surgery was needed.  (D.E. 1, at 1). It appears that she is implying the ALJ would not have denied her disability insurance benefits had he reviewed these documents.  Plaintiff also complains that the Social Security Administration compromised her privacy by erroneously including another individual's medical records in the administrative transcript, and she is under the impression that the ALJ used the other person's medical records to deny her social security benefits.  (D.E. 14, at 2; D.E. 16, at 2). Finally, she urges that summary judgment be granted in her favor because the ALJ and Dr. Dechert relied on a report that did not exist.  (D.E. 14, at 2).[6]  In response, Defendant asserts that summary judgment should be granted in his favor because the ALJ's final decision that Plaintiff

---

[6] Plaintiff has also argued that summary judgment is warranted because Defendant failed to timely file an answer.  (D.E. 14, at 1; D.E. 16).  The record reflects that summons was issued on December 22, 2011, but delivery and execution did not occur until January 6, 2012.  (D.E. 7).  Because the answer was filed on March 6, 2012, (D.E. 9), it was filed within the sixty days allotted by the summons order.

was not disabled was supported by substantial evidence and because he followed the correct

legal standards in reaching his decision.  (D.E. 13, at 3).

A.      **Plaintiff's New Evidence Does Not Warrant A Remand.**

        This Court's review of social security appeals is "wholly appellate," and the

consideration of new evidence in the first instance is prohibited.  Ellis v. Bowen, 820 F.2d 682,

684 (5th Cir. 1987) (citing Bradley v. Bowen, 809 F.2d 1054 (5th Cir. 1987)).  Upon the

discovery of new evidence, sentence six of § 405(g) authorizes district courts to remand a case

back to the Commissioner of Social Security for further proceedings if plaintiff makes an

appropriate showing that such a measure is warranted:

> The court may ... at any time order additional evidence to be taken
> before the Commissioner of Social Security, but only upon a
> showing that there is new evidence which is material and that there
> is good cause for the failure to incorporate such evidence into the
> record in a prior proceeding....

42 U.S.C. § 405(g).  The Fifth Circuit has explained that "evidence, not in existence at the time

of the administrative ... proceedings, meets the 'new' requirement for remand" pursuant to

sentence six of § 405(g).  Haywood, 888 F.2d at 1471.  The statutory materiality requirement is

met where there is a "'reasonable possibility that it would have changed the outcome of the

[Commissioner's] determination.'"  Latham v. Shalala, 36 F.3d 482, 483 (5th Cir. 1994) (quoting

Chaney v. Schweiker, 659 F.2d 676, 679 (5th Cir. 1981)).  Finally, a claimant must provide a

proper explanation concerning why the new evidence was not submitted earlier in order to

demonstrate good cause.  Pierre v. Sullivan, 884 F.2d 799, 803 (5th Cir. 1989) (citation omitted).

        Plaintiff contests the ALJ's determination for failure to consider two additional medical

documents not incorporated into the administrative record.[7]  (D.E. 14, at 3-6).  She also claims

---

        [7] Plaintiff has included other medical documents in support of her motion.  After additional review, it
appears that these documents were indeed incorporated into the administrative record.  (D.E. 14, at 7-13).

that Ms. Johnson's testimony, which the ALJ relied upon, was incorrect because she failed to take into account the severe side-effects of her pain medication. (D.E. 14, at 2).

>    **1.      Dr. Borkowski's November 12, 2008 diagnosis does not warrant remand.**

Plaintiff first introduces a November 12, 2008 medical evaluation that was not included in the administrative record. (D.E. 14, at 3-4). According to this document, Dr. Borkowski diagnosed her with "undisplaced spondylolisthesis with Modic-type changes in the sacrum."[8] Id. at 4. It is apparent that this evaluation cannot be considered "new" within the meaning of § 405(g) because it existed by the time of the administrative hearing, which was held more than two years later on March 16, 2011. In addition, it is not clear that a diagnosis of "undisplaced spondylolisthesis" is material. Dr. Borkowski did not recommend surgery, but rather ordered physical conditioning and prescribed anti-inflammatory treatment. (D.E. 14, at 4). Such conservative treatment was one of the reasons the ALJ did not believe that Plaintiff's back condition was so severe as to render her disabled. Tr. 15-16. Moreover, spondylolisthesis is not by itself a disabling condition, and the Fifth Circuit has affirmed the denial of benefits to claimants with the condition. See, e.g., Tamez v. Sullivan, 888 F.2d 334, 335-36 (5th Cir. 1989); Harvard v. Sullivan, 981 F.2d 1256, 1992 WL 386821, at *2-3 (5th Cir. Dec. 17, 1992) (per curiam) (unpublished).

Finally, Plaintiff has omitted any explanation why this document was not submitted at the earlier Social Security proceeding. At the hearing, Plaintiff's attorney was asked whether she had reviewed the exhibit file and given an opportunity to make objections.[9] Even if her attorney

---

[8] "Spondylolisthesis" generally refers to the "forward displacement (olisthy) of one vertebra over another." Dorland's, at 1684.

[9] At the beginning of the hearing, the ALJ and Plaintiff's attorney discussed the admission of exhibits:

>    ALJ:      You've had an opportunity to review the exhibit file, currently

made a mistake by failing to seek the inclusion of this document, such an error would not constitute good cause sufficient to warrant a remand.  See Skalij v. Chater, 103 F.3d 126, 1996 WL 731580, at *3 (5th Cir. Dec. 4, 1996) (per curiam) (unpublished) (explanation that records were misfiled in claimant's attorney's office did not satisfy requirement for good cause). Therefore, it is respectfully recommended that the ALJ's failure to consider Dr. Borkowski's November 12, 2008 diagnosis does not warrant remand.

2.      **Dr. Ning Huang's October 25, 2008 diagnosis does not warrant remand.**

Plaintiff has also submitted a radiology evaluation prepared by Dr. Ning Huang on October 25, 2008.  (D.E. 14, at 5).  Dr. Huang reported finding "degenerative changes of lumbar spine, most severe at L5-S1 level, with likely degenerative facet disease" as well as "marrow edema extending to the right-sided sacral ALA."  Id.  Dr. Huang also identified an "area of marrow edema probably due to facet arthritis."  Id.  This report was also not included in the administrative record.

Plaintiff has again failed to show how this evidence is new or material, as well as provide good cause to explain the absence of this document during the social security hearing.  Her failure to demonstrate materiality is especially pronounced given that Dr. Huang did not even diagnose her with any condition not already mentioned in the administrative record.  See Latham, 36 F.3d at 483 (new evidence that was cumulative of other evidence already in the record was not material).  Therefore, it is respectfully recommended that the ALJ's failure to

---

|        | consisting of Exhibits 1A through 10F? |
| Atty:  | Yes. |
| ALJ:   | Any objection to the admissibility to the exhibit file into evidence at this time? |
| Atty:  | No objection, Your Honor. |

(D.E. 10-3, at 27).

consider Dr. Huang's October 25, 2008 diagnosis does not warrant remand.

**3.     Plaintiff's new evidence about the side-effects of her pain medication does not warrant remand.**

Plaintiff also claims Ms. Johnson's testimony that she could perform sedentary jobs was incorrect because it failed to take into account the debilitating side-effects of her pain medication.  (D.E. 14, at 2).  She contends that "[j]ust with the medication I take alone, which makes me groggy and sleepy," it is impossible for her to work.  Id.  To the extent that she is introducing new evidence concerning her ability to work through her pain, she has not shown how this evidence is new or provided good cause for why she did not raise this in the administrative hearing.  Therefore, it is respectfully recommended that her new statements about the side-effects of her pain medication does not warrant remand.

**B.     The Commissioner's Decision Is Not Supported By Substantial Evidence.**

Once the Appeals Council denied Plaintiff's request for review on October 6, 2011, Tr. 1-3, the ALJ's decision became the Commissioner's final decision.  See Sims v. Apfel, 530 U.S. 103, 107 (2000) ("if ... the Council denies the request for review, the ALJ's opinion becomes the final decision") (citing 20 C.F.R. §§ 404.900(a)(4)-(5), 404.955, 404.981, 422.210(a)).  There are two components to the Commissioner's decision that appear to be under attack: (1) the RFC assessment, and (2) the determination that a person with Plaintiff's capabilities, characteristics, and background could perform work activity.

**1.     Substantial evidence supports the Commissioner's RFC assessment.**

In determining that Plaintiff was not under a disability during the relevant time period between December 15, 2008 through December 31, 2008, the ALJ looked to objective medical evidence found in the administrative record as well as her testimony.  He explained that Listing 1.04, dealing with spinal injuries, required evidence of nerve root compression, arachnoiditis, or

20

lumbar stenosis in order to justify a disability finding.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04, available at http://www.ssa.gov/disability/professionals/bluebook/1.00-Musculoskeletal-Adult.htm#1_04.  He found none of these aggravating conditions present in the record, and further review confirms no physician ever diagnosed Plaintiff with nerve root compression, arachnoiditis, or lumbar stenosis.  Furthermore, the ALJ cited to an instance where a treating physician made an explicit finding that there was no spinal stenosis.  Tr. 14-15, 210.

The ALJ also weighed the conclusions of Dr. Reddy and Dr. Decherd against Plaintiff's testimony regarding the severity of the pain she had experienced.  As a result, he found that she was more limited than either doctor determined.  Tr. 15.  Nevertheless, he determined that she could still "perform less than the full range of sedentary work" because none of her doctors placed functional restrictions on her activities that would preclude work activity and because they prescribed conservative treatments that did not involve surgery.  Tr. 16.  The ALJ was impressed by the range of activities Plaintiff performed during the period when she was purportedly disabled, and he noted that she conceded the pain medication was somewhat effective.  Tr. 16.  He also took into consideration the fact that she reported feeling "ok" on March 11, 2009, after three months of pain management.  Tr. 16, 209.

Plaintiff counters that both Dr. Decherd and the ALJ referred to a non-existent report dated on October 13, 2008 in order to show that she did not suffer from disc herniation or spinal stenosis.  (D.E. 14, at 2).  She maintains that "[t]here was no report or test dated October 13, 2008."  Id.  As Defendant points out, however, Dr. Decherd never specifically referred to a medical report or test that was conducted on October 13, 2008.  (D.E. 15, at 2).  Rather, Dr. Decherd referred to an MRI conducted in "October of 2008."  Tr. 27.  When the ALJ asked for the exhibit number, Dr. Decherd provided a citation corresponding to an MRI analysis

21

performed on October 22, 2008 that concluded Plaintiff had no disc herniation or spinal stenosis. Tr. 210.  Although the ALJ referenced an October 13, 2008 report diagnosing Plaintiff with lower back pain, sciatica, and pedal edema, Tr. 14, further examination of the record shows that Dr. Caveda did indeed diagnose her with those conditions on October 13, 2008.  Tr. 300.

Contrary to Plaintiff's fears that the ALJ used another individual's medical information to erroneously deny her disability benefits, (D.E. 16, at 2), the ALJ's written explanation for his finding shows that her concerns are unfounded.  In justifying his decision, the ALJ provided citations to Plaintiff's personal medical records and accurately described the content of those records.  Tr. 14-16.  There is no indication that the ALJ relied on any exhibit containing the medical information of an individual named "Joseph Salem," which was seemingly included in the administrative record by accident.  Tr. 267-290.  In the absence of any showing by Plaintiff that her substantial rights were affected by the inclusion of Mr. Salem's medical documents in the record, neither reversal nor remand are warranted.  See Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988) ("This court will not vacate a judgment unless the substantial rights of a party have been affected.") (citing Carter v. Massey-Ferguson, Inc., 716 F.2d 344, 349 (5th Cir. 1983)).

Given the administrative record and the ALJ's justifications, it is respectfully recommended that the Commissioner's RFC finding is supported by substantial evidence.

**2.      The Commissioner's determination that Plaintiff could have performed sedentary jobs is not supported by substantial justification.**

After determining Plaintiff's RFC, the ALJ concluded she was not disabled by relying on Ms. Johnson's testimony that a hypothetical individual with her capabilities, characteristics, and background could perform work activity.  Tr. 17.  To recapitulate, the ALJ determined that she was capable of lifting or carrying up to ten pounds occasionally, stand or walk two hours in an

eight-hour work day, sit six hours in an eight-hour work day, needed a sit/stand option and the ability to elevate her feet, and was unable to climb ropes, scaffolds or ladders, balance, or work at unprotected heights.  Tr. 16.  Although the ALJ represented that he asked Ms. Johnson whether an individual with those limitations could perform sedentary work, the hearing transcript reveals that none of his questions to her fully reflected his RFC finding.  Specifically, the ALJ asked Ms. Johnson to consider an individual who could "lift and carry 20 occasionally, only 10 frequently."  Tr. 48.  It was with reference to this limitation that Ms. Johnson responded that Plaintiff could perform sedentary work.

The difference between the RFC finding and the limitations incorporated into the hypothetical question is not insignificant.  The hypothetical person the ALJ refers to at the hearing who can exert twice as much force as Plaintiff was only occasionally capable of lifting or carrying.  Moreover, this individual who can frequently exert as much force as Plaintiff could only occasionally lift or carry.  In short, the person described in the hypothetical question was twice as strong as Plaintiff and possessed greater endurance as well.

For a hypothetical to be proper, it "need only incorporate the disabilities that the administrative law judge recognizes."  Wise v. Barnhart, 101 F. App'x 950, 951 (5th Cir. 2004) (per curiam) (unpublished) (citing Bowling, 36 F.3d at 435; Morris v. Brown, 864 F.2d 333, 336 (5th Cir. 1988)).  This is accomplished if the hypothetical reasonably incorporates the plaintiff's RFC.  See White v. Astrue, 240 F. App'x 632, 634 (5th Cir. 2007) (per curiam) (unpublished) ("Because the VE's testimony, which [plaintiff] did *not* challenge through cross-examination, was elicited by hypothetical questions incorporating the RFC determination, such reliance was proper.") (citing Bowling, 36 F.3d at 436) (emphasis in original).

On the other hand, in the Fifth Circuit, a finding of non-disability that is based on a

defective hypothetical constitutes reversible error:

> [U]nless the hypothetical question posed to the vocational expert
> by the ALJ can be said to incorporate reasonably all disabilities of
> the claimant recognized by the ALJ, and the claimant or his
> representative is afforded the opportunity to correct deficiencies in
> the ALJ's question by mentioning or suggesting to the vocational
> expert any purported defects in the hypothetical questions
> (including additional disabilities not recognized by the ALJ's
> findings and disabilities recognized but omitted from the question),
> a determination of non-disability based on such a defective
> question cannot stand.

Bowling, 36 F.3d at 436.  Moreover, an incomplete hypothetical will not be automatically saved

solely because a claimant fails to point out its deficiencies at the hearing.  Boyd v. Apfel, 239

F.3d 698, 707 (5th Cir. 2001) (citing Bowling, 36 F.3d at 436).  Indeed, the Fifth Circuit has

found that relying upon the vocational expert's testimony was reversible error when the ALJ

grossly misrepresented what he had determined were the plaintiff's residual functional

capacities, excluded serious medical conditions affecting the plaintiff, or stated that a plaintiff's

condition had improved when, in reality, it had not.  In Bowling, the Fifth Circuit considered

whether an ALJ's mischaracterization of the claimant's lifting capacity and kidney condition

required remand.  36 F.3d at 436.  There, the ALJ's RFC finding determined that the plaintiff

could only lift twenty pounds, but the ALJ's hypothetical question assumed that the plaintiff

could occasionally lift and carry fifty pounds and frequently lift and carry twenty pounds.  Id.

Due in part to this discrepancy, the Fifth Circuit found that the ALJ's hypothetical was defective

and ordered remand.  Id.

The Fifth Circuit's holding in Bowling controls.  Given that the discrepancy between the

ALJ's RFC finding and the hypothetical question presented to Ms. Johnson is similar in degree

to the defective hypothetical described in Bowling, the ALJ's hypothetical was defective by

analogy.  It is therefore respectfully recommended that the ALJ's hypothetical did not reasonably

incorporate the limitations recognized in the RFC findings.

The Fifth Circuit has determined that district courts reviewing denials of social security benefits must apply a harmless error analysis.  Audler v. Astrue, 501 F.3d 446, 448 (5th Cir. 2007) ("Having determined that the ALJ erred in failing to state any reason for her adverse determination at step 3, we must still determine whether this error was harmless.") (citation omitted).  The Audler court further explained that "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" Id. (quoting Mays, 837 F.2d at 1364).

It cannot be said that the ALJ's error was harmless.  While Plaintiff's attorney presented a counter-hypothetical that incorporated the ALJ's RFC finding that Plaintiff could only lift ten pounds occasionally, she also added that Plaintiff could only work four hours out of an eight-hour day.  Tr. 52.  Because the inability to work a full eight-hour day precluded a finding that such an individual could engage in substantial gainful activity, Ms. Johnson replied that she would be unemployable.  Tr. 52-54.  Therefore, Defendant cannot rely on the counter-hypothetical both because it does not incorporate fully the other RFC findings that Plaintiff could work eight hours per day and because Ms. Johnson never explicitly said that the individual described by the counter-hypothetical could perform sedentary work.  Nor should Defendant be permitted to create and rely upon a Frankenstein hypothetical using pieces from the ALJ's hypothetical as well as counsel's counter-hypothetical.  Such an exercise amounts to pure speculation about what Ms. Johnson would have answered had she been asked the proper hypothetical question in the first instance.  Accordingly, it is further respectfully recommended that the ALJ's defective hypothetical cannot be considered harmless error.

**C.      Reversal Is Not Appropriate.**

Plaintiff requests that the Court essentially reverse the Commissioner's decision and enter judgment that Plaintiff is entitled to benefits.  (D.E. 14, at 2).  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Nevertheless, the Fifth Circuit has held an immediate award of benefits is precluded where "the record contains inconsistencies and unresolved issues."  Beaumont v. Barnhart, 81 F. App'x 839, 839 (5th Cir. 2003) (per curiam) (unpublished) ("Conflicts in the evidence are for the [Commissioner] and not the courts to resolve.") (quoting Newton, 209 F.3d at 452).

Here, there remains one unresolved issued–whether an individual with Plaintiff's capabilities, characteristics, and background is capable of performing sedentary work.  In order to resolve this issue, the ALJ must seek guidance from a vocational expert regarding Plaintiff's employment prospects based on the actual RFC finding.  Like the Fifth Circuit determined in Bowling, 36 F.3d at 437, remand is the appropriate course of action.

Accordingly, it is respectfully recommended that the Court not immediately award benefits, and that the case be remanded for further proceedings.

## V.  <u>RECOMMENDATION</u>

For the reasons stated herein, it is respectfully recommended that Plaintiff's motion for summary judgment, (D.E. 14), be granted only insofar as to resolve the ALJ's reliance on the defective hypothetical question and denied as to the remaining issues.  It is further respectfully recommended that Defendant's motion for summary judgment, (D.E. 12), be denied as to the defective hypothetical question but granted with respect to all other issues.  Finally, it is respectfully recommended that this action be remanded to the Social Security Administration for further proceedings in accordance with the memorandum and recommendation.

Respectfully submitted this 22nd day of May 2012.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).